IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| CARLOS ANDREWS,<br><br>    Plaintiff,<br><br>vs.<br><br>LOUIS DEJOY, Postmaster General,<br>United States Postal Service,<br><br>    Defendant. | CV-20-11-GF-BMM<br><br>**ORDER** |

### INTRODUCTION

The parties to this action, Plaintiff Carlos Andrews ("Andrews") and Defendant Louis Dejoy, as Postmaster General of the United States Postal Service ("Postal Service"), have submitted competing motions for summary judgment on all claims. (Docs. 50 & 54). The Court held a hearing on the motions on July 26, 2021. For the following reasons, the Court determines that genuine issues of material fact preclude summary judgment for both parties.

### BACKGROUND

The Postal Service hired Andrews as a non-career/temporary employee on November 16, 2013, at the Great Falls Processing Annex. (Doc. 41 at ¶1; Doc. 51

at 1). Andrews last reported to work on March 26, 2014, and was terminated by the Postal Service on November 10, 2014. (Doc. 41 at ¶3; Doc. 52 at ¶3).

Andrews asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000-e *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq*, against Postmaster Dejoy. (Doc. 3). Andrews alleges that during his employment at the United States Postal Service Processing Annex in Great Falls, Montana, he was subjected to race discrimination, disability discrimination, a hostile work environment, and retaliation. *See* (Doc. 3 at 9-13; Doc. 51 at 9-21; Doc. 52 at ¶¶3-17). Andrews alleges fifteen total instances of discriminatory or retaliatory conduct on part of the Postal Service. *See* (Doc. 3). The Postal Service's Equal Employment Opportunity Office accepted the same claims for investigation on November 24, 2014. (Doc. 52 at ¶6).

## LEGAL STANDARD

Summary judgment is proper if the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 317, 323 (1986). The movant bears the initial burden of informing the court of the basis for its motion and identifying those portions of "the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

The movant's burden is satisfied when the documentary evidence produced by the parties permits only one conclusion. *Anderson*, 477 U.S. at 251–52. Where the moving party has met its initial burden, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but [. . .] must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248 (internal quotation marks omitted).

## ANALYSIS

### I. Whether Andrews established prima facie claims under Title VII.

Title VII prohibits discrimination in the federal sector on the basis of race, color, religion, sex, and national origin. 42 U.S.C. § 2000e-16. Andrews asserts disparate treatment claims and hostile work environment claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000-e *et seq.* (Doc. 3).

#### a. Disparate Treatment Claims

Courts analyze claims of discriminatory disparate treatment using the burden-shifting approach outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The plaintiff must establish a prima facie case. *Id.* at 802. The burden of production then shifts to the employer to show that it took the adverse

employment action for a nondiscriminatory reason. *Id.* If the employer satisfies its burden, the Plaintiff must show that the reason offered by the employer was a pretext to justify its action. *Id.*

To establish a prima facie case of disparate treatment under Title VII, a plaintiff must show the following elements: (1) that he belongs to a protected class; (2) that he was qualified for the position; (3) that he was subjected to an adverse employment action; and (4) circumstances that could, without explanation, support an inference of discriminatory motive. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002).

Andrews alleges four acts of race-based disparate treatment in his Complaint. Andrews alleges in Claim 1 that management required him to work from December 1, 2013 to December 16, 2013, without a day off. (Doc. 3 at 9). Andrews alleges in Claim 2 that between December 2013 and March 2014, management assigned him heavier duties than co-workers, assigned him 12-hour shifts, and denied him any assistance. *Id.* Andrews alleges in Claim 5 that management asked him to cover for a co-worker who took an extended lunch break on January 25, 2014, and on various other dates. *Id.* at 10. Andrews alleges in

Claim 12 that management singled him out and overly scrutinized him on various dates in March 2014. *Id.* at 13.

Disputes of fact prevent Andrews from establishing a prima facie case for his claims. Each allegation Andrews asserts regarding disparate treatment under Title VII remains subject to dispute. In response to Andrews's allegations in Claims 1 and 2 that he was given fewer days off and more strenuous work, the Postal Service argues that it gave Andrews work schedules and assignments similar to other employees. (Doc. 51 at 30). It provides employment attendance records that show Andrews did not work December 1, 2013. (Doc. 52 at ¶9). It also cites to employment records of similarly situated employees to show that Andrews worked a similar schedule and within the relevant period. (Doc. 51 at 29). These assertions raise factual questions as to whether Andrews experienced racial discrimination that the jury must resolve.

Claims 5 and 12 also remain subject to dispute. The factual record to demonstrate that Andrews covered for a co-worker taking a late lunch and Andrews being singled out by management remains unclear. Both sides assert a different interpretation of the alleged facts. For example, the parties offer conflicting views on whether management knew that a co-worker was taking

additional time for lunch. The presence of this dispute regarding a material fact requires the jury to sort out the issue.

### b. Hostile Work Environment Claims

To establish a hostile work environment claim under Title VII, a plaintiff must show the following elements: (1) that he was subjected verbal or physical conduct because of his membership in a class protected by Title VII; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment. *Manatt v. Bank of America*, NA, 339 F.3d 792, 798, (9th Cir. 2003).

An employer stands vicariously liable for a hostile work environment created by a supervisor. *Reynaga v. Roseburg Forest Products*, 847 F.3d 678, 689 (9th Cir. 2017). An employer is vicariously liable for the hostile work environment created by a co-worker if the "employer knew, or should have known, about the harassment and failed to take prompt and effective remedial action." *Id.*

Andrews alleges six acts of a race-based hostile work environment. Andrews alleges in Claim 3 that his supervisor used offensive language on January 8, 2014, and ordered Andrews to clock out. (Doc. 3 at 9). Andrews alleges in Claim 4 that co-workers refused to cooperate with him and made his job more difficult and that management ignored his requests to intervene. *Id.* at 10. Andrews alleges in Claim 6 that co-workers made offensive and confrontational comments towards him,

including that he should be fired or find another job. *Id.* Andrews alleges in Claim 7 that management accused him of creating a hostile work environment for a co-worker and banned Andrews from the co-worker's work area on or about February 9, 2014. *Id.* at 11. Andrews alleges in Claim 8 that management instructed him to stay away from a female co-worker and from her work area on or about February 12, 2014. *Id.* at 11. Andrews alleges in Claim 12 that management singled him out and overly scrutinized him on various dates in March 2014. *Id.* at 12-13.

    The Postal Service has presented disputed facts in response to all of the claims in Andrews's Complaint that relate to a hostile work environment. The Postal Service maintains that management's actions were not racially-oriented, but instead stem from Andrews's own actions in the workplace. (Doc. 51 at 31-32). In response to Claims 3, 4, and 6, the Postal Service points out there was no racially discriminatory content expressed when management ordered him to get back to work on January 8, 2014, and again when he had altercations with co-workers. *Id.* And again in Claims 7, 8, and 12, the Postal Service claims that there was no racially discriminatory content expressed when management addressed Andrews in response to allegations that he interfered with a co-worker's sorting work, followed an employee around the facility, and talked about strip clubs. *Id.* at 32.

    The Postal Service also insists that the actions taken by management in the allegations were not "objectively severe or pervasive." *Id.* at 32. Andrews, on the

other hand, alleges facts in his Complaint that could indicate that the Postal Service knew of the hostile work environment and failed to remedy it. The jury must resolve these disputes of material fact regarding the second and third elements for Andrews's prima facie hostile work environment claim. *Manatt*, NA, 339 F.3d at 798.

## II. Whether Andrews established prima facie claims under the Rehabilitation Act.

The Rehabilitation Act prohibits discrimination against qualified employees based on a disability. Andrews alleges four different claims based on the Rehabilitation Act: (1) a disparate treatment claim; (2) a hostile work environment claim; (3) a retaliation claim; and (4) a failure to provide reasonable accommodation claim. (Doc. 3).

### a. Disparate Treatment Claims

To state a prima facie case of disparate treatment under the Rehabilitation Act, a plaintiff must show the following elements: (1) that he is a person with a disability; (2) that he is qualified for the position he holds; and (3) that he suffered discrimination because of his disability. *Walton v. United States Marshals Service*, 492 F.3d 998, 1005 (9th Cir. 2007). A person is disabled if he has a physical or mental impairment that substantially limits one or more of the individual's major life activities. *Coons v. Sec. of U.S. Dept. of Treas.*, 383 F.3d 879, 884 (9th Cir. 2004). To be substantially limited, the person must be unable to "perform the

major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(ii).

Andrews alleges three acts of disparate treatment based on disability. Andrews alleges in Claim 10 that on or about February 26, 2014, management laughed at the note prepared by his doctor requesting light work duty. (Doc. 3 at 12). Andrews alleges in Claim 11 that on February 28, 2014, his supervisor told him that he was no longer of any use and instructed him to go home. *Id.* Andrews alleges in Claim 13 that on or about March 3, 2014, management recommended that he take the rest of the week off given his medical condition. *Id.* at 13.

The Postal Service argues that Andrews cannot establish that he suffered from a disability because he failed to produce the doctor's alleged note in discovery that is referenced in Claim 10 and that any impairments suffered by Andrews proved temporary. Andrews's failure to produce the doctor's note referenced in Claim 10 is not dispositive on its own as to his disability status. The disability standard defined in *Coons* presents a question of fact. 383 F.3d at 885. A jury's review of the factual record will determine Andrews's disability status.

Furthermore, "[t]he primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity." 29 C.F.R. § 1630.2(j)(iii). The Postal

Service seems to rely solely on Andrews's "lack" of disability for its claim for summary judgment on Rehabilitation Act disparate treatment claims. (Doc. 51 at 33). The critical inquiry centers, however, around the third requirement to establish a prima facie case: whether the Postal Service discriminated against Andrews and acted against its obligations under the Rehabilitation Act. The factual record as to whether the Postal Service discriminated against Andrews remains in dispute. Andrews claims that the Postal Service discriminated against him because of his disability when management laughed at his doctor's note, told him that he was no longer of any use and instructed him to go home, and recommended that he take the rest of the week off given his medical condition. (Doc. 3 at 12-13). The Postal Service disagrees. (Doc. 51 at 34). The jury must resolve these disputes of material fact as to the disability discrimination that Andrews alleges.

### b. Hostile Work Environment Claims

The Ninth Circuit has not recognized a hostile work environment claim under the Rehabilitation Act. *Baumgart v. State of Washington*, 189 F.3d 472, at *1 (9th Cir. 1999) (unpublished). Other circuits have recognized, however, a hostile work environment claim under the Rehabilitation Act. *See, e.g., Fox v. Gen. Motors Corp.*, 247 F.3d 169 (4th Cir. 2001), *Shaver v. Indep. Stave Co.*, 350 F.3d 716, 719-20 (8th Cir. 2003).

The elements of the hostile work environment claim under the Rehabilitation Act are the same as the hostile work environment claim under Title VII. A plaintiff must show the following elements: (1) that he was subjected verbal or physical conduct because of his membership in a class protected by Title VII; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment. *Manatt*, 339 F.3d at 798.

Andrews alleges the same three acts of a hostile work environment based on disability as he does to support his claims for disparate treatment under the Rehabilitation Act. Andrews alleges in Claim 10 that on or about February 26, 2014, management laughed at the note prepared by his doctor requesting light work duty. (Doc. 3 at 12). Andrews alleges in Claim 11 that on February 28, 2014, his supervisor told him that he was no longer of any use and instructed him to go home. *Id.* Andrews alleges in Claim 13 that on or about March 3, 2014, management recommended that he take the rest of the week off given his medical condition. *Id.* at 13.

Even if the Ninth Circuit recognized a hostile work environment claim under the Rehabilitation Act, genuine issues of disputed material fact exist relating to the elements that Andrews needs to establish for a prima facie case. These genuine disputes of material fact for Claims 10, 11, and 13 apply to different prima facie

case elements. The factual disputes apply directly to the second and third elements and prevent Andrews from establishing his claims on undisputed facts. *Manatt*, 339 F.3d at 798. The jury must resolve these disputes.

### c. Retaliation Claims

To prove a prima facie case of retaliation under the Rehabilitation Act, a plaintiff must show the following elements: (1) that he was involved in a protected activity; (2) that he suffered an adverse employment action; and (3) that a causal link exists between the protected activity and the adverse employment action. *Coons*, 383 F.3d at 887. Retaliation claims follow the *McDonnell Douglas* burden-shifting approach discussed above.

Andrews alleges in Claim 15 that the Postal Service terminated his employment in retaliation to his filing of a discrimination complaint with the Postal Service's EEO office in June 2014. (Doc. 3 at 13). Andrews relies on disputed facts to establish the third element – a causal link between the protected activity and the adverse employment action. *Coons*, 383 F.3d at 887. Andrews alleges that the Postal Service relies on a pretextual reason for his termination. *See* (Doc. 61 at 57-67). He cites to the record numerous times and gives specific dates and instances in his attempt to prove the pretextual nature of the termination of his employment. Like his other claims, the record he cites remains disputed. The Postal Service points to Andrews's conduct as the reason for his termination. (Doc.

51 at 37). The Postal Service claims that it gave Andrews multiple opportunities to avoid termination, but Andrews failed to provide the right documentation and missed two in-person meetings to explain his situation. *Id.*; (Doc. 52 at ¶¶76, 78-79, 82-83). The Postal Service also claims that the termination was justified because Andrews failed to show up to work for four months. (Doc. 51 at 37); (Doc. 52 at ¶85). The jury must sort out these disputed facts surrounding Andrews's effort to establish the third element of his prima facie claim.

### d. Failure to Provide a Reasonable Accommodation Claims

The Rehabilitation Act requires an employer to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability" unless the employer "can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A).

A plaintiff alleging a failure to accommodate a claim under the Rehabilitation Act must show the following: (1) that he has a disability within the meaning of the ADA; (2) that the employer has a notice of his disability; (3) that he could perform the essential functions of his job with a reasonable accommodation; and (4) that the employer has refused to provide a reasonable accommodation. *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2002). "[O]nce the employee requests and accommodation, the employer

13

must engage in an interactive process with the employee to determine an appropriate accommodation. *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002).

Andrews alleges five acts that relate to his failure to accommodate claim. Andrews alleges in Claim 9 that management ignored his request on or about February 21, 2014, to be reassigned to a different job based on the swelling in his forearms. (Doc. 3 at 12). Andrews alleges in Claim 10 that on or about February 26, 2014, management laughed at the note from his doctor requesting that he be assigned to light duty work. *Id.* Andrews alleges in Claim 11 that on February 28, 2014, his supervisor told him he was no longer of any use and told him to go home. *Id.* Andrews alleges in Claim 13 that on or about March 3, 2014, management recommended that he take the rest of the week off given his medical condition. *Id.* at 13. Andrews alleges in Claim 14 that management refused to grant his request for a reasonable accommodation on March 18, 2014, and on subsequent dates. *Id.*

The Postal Service argues that Andrews cannot establish elements one and two because he failed to provide notice of his disability. (Doc. 51 at 35). Instead, the Postal Service asserts that Andrews gave notice only of a temporary impairment. *Id.* Andrews claims, on the other hand, that Great Falls Clinic and Benefis provided the Postal Service with medical documentation upon request showing his disability. (Doc. 61 at 56). These genuine issues of disputed fact

prevent Andrews from proving as a matter of law that he gave the Postal Service notice of disability.

Further, the Postal Service argues that Andrews cannot establish elements three and four because it provided reasonable accommodation by placing Andrews at the "pouch rack" area upon notice of his injuries and even sending him home for the week due to Andrews's pain level. (Doc. 51 at 35). Andrews insists, however, that the Postal Service failed to provide a reasonable accommodation. (Doc. 61 at 56). Andrews cites to an email from Manager Paul Grilley to HRM Specialist Carol Thomassen. *Id.* The email states that the Postal Service did not "give him a light duty per se," but that it "moved him to a less physically demanding operation while he tried to recover from his alleged injury." (Doc. 56-14 at 15). Andrews alleges to have suffered another injury while working at this accommodated position. (Doc. 56 at 13). The Postal Service disputes that an unreasonable accommodation caused this alleged injury. (Doc. 51 at 36). The jury will resolve these disputed facts as to whether the Postal Service's accommodation proved reasonable.

## ORDER

Accordingly, **IT IS ORDERED** that Defendant's Motion for Summary Judgement (Doc. 50) and Plaintiff's Motion for Summary Judgment (Doc. 54) are **DENIED**.

Dated this 2nd day of November, 2021.

_____
Brian Morris, Chief District Judge
United States District Court